# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# OWENSBORO DIVISION
# CIVIL ACTION NO. 4:19-CV-00087-JHM-HBB

ANASTASIA CARMAN                                                                      PLAINTIFF

VS.

SIGNATURE HEALTHCARE, LLC, et al.                          DEFENDANTS

## MEMORANDUM OPINION AND ORDER

Before the Court is Carman's Motion for Discovery on Issues Relating to Enforcement of Purported Arbitration Agreement (DN 10). Defendant, Signature Healthcare, LLC, has filed a response (DN 13). Carman has filed a reply (DN 18). This matter was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(A) (DN 4) and is ripe for determination.

## Discussion

Carman's complaint presents six claims brought on behalf of herself and all others similarly situated as a collective action pursuant to the Fair Labor Standards Act (FLSA) and a class action under Kentucky State Law. The claims stem from Carman's employment as a Registered Nurse with Signature. Her employment has since ended.

Carman's motion seeks permission to begin discovery related to Signature's intention to seek enforcement of the Mediation and Arbitration Agreement signed by the parties ("the agreement")[1]. Carman raises several claims which she argues contain mixed questions of law and fact that extend beyond the scope of the documents already filed with the Court. Carman's motion

---

[1] Subsequent to Carman's motion being filed, Signature filed a Motion to Dismiss and Compel Arbitration (DN 12).

primarily focuses on two issues: 1) whether the agreement violated KRS § 336.700, which at the time the agreement was executed expressly prohibited condition of employment upon arbitration agreements and 2) whether the method by which Signature required Carman (and similarly situated employees) to "approve" and "agree to" onboarding documents was procedurally unconscionable (DN 10 PageID # 195). Carman seeks to proceed with discovery related to these issues (DN 10 PageID # 194-95). Signature opposes discovery, arguing it will make no "material difference" adjudicating the merits of its Motion to Dismiss and Compel Arbitration (DN 12).

Arbitration agreements are "valid, irrevocable, and enforceable" unless invalidated by generally applicable contract defenses such as fraud, duress, or unconscionability. Rent-A-Center, West, Inc. v. Jackson, 561 U.S. 63, 68-69 (2010). If a district court finds that the agreement to arbitrate is in issue, the court must proceed to trial to resolve the question. 9 U.S.C. § 4. To place the validity of the agreement in issue, the party opposing arbitration must show a genuine issue of material fact as to the validity of the agreement to arbitrate. Great Earth Cos. v. Simons, 288 F. 3d 878, 889 (6th Cir. 2002). This showing mirrors that required to survive summary judgment. The Court must view all facts and inferences in the light most favorable to the party seeking to invalidate the agreement and determine whether the evidence presented is enough that a reasonable finder of fact could conclude that no valid agreement to arbitrate exists. Great Earth, 288 F. 3d at 889.

Carman presents a question of procedural unconscionability. Procedural unconscionability refers to the process by which an agreement is reached. Schnuerle v. Insight Communications Co., L.P., 376 S.W.3d 561, 576 (Ky. 2012). Carman seeks information related to Signature's onboarding process. She claims Signature requires newly hired employees to execute numerous lengthy and convoluted documents in a short amount of time insufficient to adequately read and

2

comprehend the documents. Carman alleges Signature knows employees are not reading, and cannot possibly read, the documents in the time allotted (DN 10 PageID # 195). Although this Court has not found a Kentucky case that has invalidated a contract specifically based on lack of time to review its terms, other courts have. See Gilgar v. Public Storage, 2019 WL 698052 (Cal. App. February 20, 2019). Moreover, such a process could be inconsistent with Kentucky law which considers contracts unconscionable if they contain some combination of inconspicuous print, convoluted or unclear language that conceals or obscures a contractual term, unequal bargaining power between the parties, incomprehensible contract language, oppressive terms, and a lack of meaningful choice. GGNSC Louisville St. Matthews v. Madison, 254 F. Supp 3d 901, 911-912 (W.D. Ky. 2017).

The issue of the onboarding process is magnified by allegedly unclear and contradicting language in the contract. "Convoluted and unclear language" can be significant enough to deem a contract void for procedural unconscionability. Value Services of Kentucky, LLC v. Watkins, 309 S.W. 3d 256 (Ky. App. 2009) (*see also* Conseco Finance Servicing Corp. v. Wilder, 47 S.W 3d 335 (Ky. App. 2001)). Carman argues the terms of her employment contract are insufficiently clear, and therefore void. She alleges Signature engaged in a "bait and switch" wherein the Alternative Dispute Resolution Plan provided to new employees permits class arbitrations and is later contradicted by the Mediation and Arbitration Agreement (DN 1 PageID # 11). A reasonable juror may determine that this contradiction presents "unclear language" that employees of "ordinary experience and education" are unlikely to understand. See Value Services, 309 S.W. 3d 356 at 262; Conseco, 47 S.W. 3d 335 at 342-343; Schnuerle v. Insight Communications Co., L.P., 376 S.W. 3d 561 (Ky. 2012). This is especially true if Signature's onboarding process was

inappropriately rushed so prospective employees could not read and comprehend the terms of the contract and seek to clarify their meaning with Signature.

Signature attempts to rebut this point by citing Western District of Kentucky cases that have upheld contracts negotiated with "voluminous paperwork and disparate bargaining power" between the parties (DN 13 PageID # 235 citing Golden Gate Nat'l Senior Care, LLC v. Hudson, WL 4274167, at *2 (W.D. Ky. Sept. 26, 2017)). It is true that "many situations—such as buying a house or a car, visiting the doctor, or starting a new job—involve a lengthy process in which an individual must complete a substantial amount of paperwork. [And] this alone does not make a contract procedurally unconscionable" (Id. citing GGNSC Louisville Hillcreek, LLC v. Watkins, 2016 WL 815295, at *6 (W.D. Ky. Feb. 29, 2016)). But this analogy is inapposite to the present case. At issue is not a lengthy process—but the opposite. Carman claims Signature's onboarding process was inappropriately rushed and did not afford her, and similarly situated employees, the opportunity to meaningfully review her employment contract. Neither case cited by Signature addresses a rushed contract execution process.

Carman also seeks information that would prove Signature's actual knowledge of KRS § 336.700 and the Kentucky Supreme Court decision Northern Kentucky Area Development District v. Snyder, 570 S.W.3d 531 (Ky. 2018) ("NKADD") at the time the employment contract was executed (DN PageID # 196). Signature's knowledge of both are relevant to Carman's claims. At the time of the execution of the contract, KRS § 336.700(2) barred employers from conditioning employment on an employee agreeing to "waive, arbitrate, or otherwise diminish any existing future claim, right or benefit" the employee was entitled under Kentucky or Federal Law. NKADD upheld KRS § 336.700 against argument that the law was preempted by the Federal Arbitration Act. 570 S.W. 3d at 535-37. In 2019, the Kentucky Legislature amended KRS § 336.700 to allow

employers to condition employment on an employee's assent to an arbitration agreement. The statute was retroactively applied to contracts executed prior to June 27, 2019.

At the time the contract between Carman and Signature was executed Kentucky law forbade conditioning employment on the employee's assent to an arbitration clause. The arbitration agreement appears to have been updated by Signature after the NKAAD decision but assent to its terms remained a condition of employment despite Kentucky law barring the practice (DN 1-37 PageID # 111). Carman seeks discovery to show that Signature was not only presumed to be aware, but actually aware, of Kentucky law at the time the employment contract was executed. This discovery may prove crucial to discerning the parties' reasonable expectations upon entering the contract, and whether a meeting of the minds ever existed. Carman has already provided some evidence that NKADD was relevant to terms of the Mediation and Arbitration Agreement. The agreement was marked "Updated October 2018" soon after the NKADD decision. It is possible this notation reflects an effort by Signature to become compliant with Kentucky law by removing from the contract the condition that an employee agree to the arbitration clause

Signature's argument that a party to NKADD sought rehearing, thereby delaying the final resolution of the case until after the contract was executed is irrelevant. KRS § 336.700 remained operative and explicitly banned conditioning employment on assent to an arbitration agreement. Moreover, Signature positing that the information sought could be privileged does not bear on this Court's decision. Signature will be free to object to producing privileged information during the discovery process, but refusing discovery based on hypothetical future assertions of attorney-client privilege is not appropriate. See United States v. Goldfarb, 328 F.2d 280, 281 (6th Cir. 1964).

Carman has shown a genuine issue of material fact as to the validity of the agreement to arbitrate. A reasonable finder of fact could conclude that the onboarding process by which Carman was required to sign employment documents was procedurally unconscionable. Carman has also presented genuine questions as to whether the agreement to arbitrate was invalid under Kentucky law at the time of its execution and whether the parties could reasonably have been expected to be bound by its terms.

ORDER

**IT IS HEREBY ORDERED** that Carman's Motion for Discovery on Issues Relating to Enforcement of Purported Arbitration Agreement is **GRANTED**.

**IT IS FURTHER ORDERED** that a telephonic conference to discuss scheduling will be conducted on October 30, 2019 at 10:30 A.M. The Court will initiate the call.