## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## OWENSBORO DIVISION
## CIVIL ACTION NO. 4:19-CV-00087-JHM-HBB

**ANASTASIA CARMAN** *on behalf of*
*Herself and All Others Similarly Situated*　　　　　　　　　　　**PLAINTIFF**

VS.

**SIGNATURE HEALTHCARE, LLC;**
**STAKEHOLDER PAYROLL SERVICES, LLC;**
**And LP CALHOUN, LLC**　　　　　　　　　　　　　　　　　　　**DEFENDANT**

## MEMORANDUM OPINION AND ORDER

This order addresses Defendant Signature Healthcare, LLC's production of documents and claims of privilege. During a telephonic status conference on February 3, 2020 the undersigned directed Signature Healthcare to produce for *in camera* review the privilege log and related documents for which it asserts privileged status (DN 46). The undersigned has completed *in camera* review of the documents. The privilege log is attached to this Order as an exhibit.

### Background

The communications are nineteen e-mails and one memorandum, the earliest dated June 15, 2016 and the latest February 22, 2019. The subjects are issues associated with the enforceability of agreements to submit employment disputes to arbitration and the impact of the decision of the Kentucky Supreme Court in N. Ky. Area Dev. Dist. v. Snyder, 570 S.W.3d 531 (Ky. 2018), which held enforcement of such agreements is prohibited by state statute. The majority of the e-mails were authored by Quita Bunton, whom Signature Healthcare has identified as in-house counsel. Eight were authored by attorneys, identified by Signature Healthcare as outside

counsel, and the memorandum was authored by an individual whom Signature Healthcare has identified as a legal extern.

All the e-mails sent by outside counsel were addressed to Ms. Bunton. The memorandum likewise indicates that it was prepared for her review. Some of the e-mails sent to Ms. Bunton were copied to others. Likewise, when Ms. Bunton sent e-mails to outside counsel she often copied other persons. Ms. Bunton sent four of the e-mails solely inter-company. The persons copied on communications or receiving inter-company communications held the following positions within Signature Healthcare: in-house counsel; paralegal; human resources; legal assistant; president and chief executive officer; chief financial officer; chief operating officer; labor relations; and legislative affairs.

## Applicable Law

Carman asserts a cause of action under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*. Additionally, she asserts a cause of action under the Kentucky Wage and Hours Act, asking that the Court exercise supplemental jurisdiction over her state law claims under 28 U.S.C. § 1367 (DN 1). Consequently, as this action does not arise from diversity jurisdiction, the Court looks to federal law to determine the parameters of privilege claims. *See* Reed v. Baxter, 134 F.3d 351, 355 (6th Cir. 1998) (citing Fed. R. Evid. 501).

Rule 26(b)(1) of the Federal Rules of Civil Procedure mandates that privileged matters are afforded an absolute protection from discovery. The attorney-client privilege is available to corporate entities. Burton v. Zwicker & Assocs., PSC, No. 10-227-WOB-JGW, 2012 U.S. Dist. LEXIS 195470, *4 (E.D. Ky. Jan. 9, 2012). It "is the oldest of the privileges for confidential communications known to the common law." Upjohn Co. v. United States, 449 U.S. 383, 389, (1981) (citations omitted). The aim of this privilege is "to encourage full and frank communication

between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." Id. at 389; Hunt v. Blackburn, 128 U.S. 464, 470 (1888). "However, it is not an absolute privilege. It applies only where necessary to achieve its purpose and protects only those communications necessary to obtain legal advice." In re Antitrust Grand Jury, 805 F.2d 155, 162 (6th Cir. 1986) (citing Fisher v. United States, 425 U.S. 391, 403 (1975)). Under federal common law the elements of the attorney-client privilege are as follows:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his insistence permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection is waived.

Reed v. Baxter, 134 F.3d 351, 355-56 (6th Cir.1998) (citing Fausek v. White, 965 F.2d 126, 129 (6th Cir.1992); United States v. Goldfarb, 328 F.2d 280, 281 (6th Cir.1964)).

The request for advice need not be express, and communications intended to keep the attorney advised of continued developments, with an implied request for legal advice thereon, or self-initiated attorney communications intended to keep the client posted on legal developments and implications may also be protected. See Hercules, Inc. v. Exxon Corp., 434 F. Supp. 136, 144-45 (D. Del. 1977). Not every communication to or from an attorney is subject to the attorney-client privilege. Communications not involving legal advice, such as communications seeking business advice, are not protected. Burton, 2012 U.S. Dist. LEXIS 195470 at *4. However, where legal consequences of various business options are discussed, the communication is generally considered legal rather than business advice in nature. See In re Grand Jury Subpoena Duces Tecum, 731 F.2d 1032, 1037-38 (2d Cir. 1984). Determining the applicability of the attorney-client privilege is a mixed question of law and fact. Reed, 134 F.3d at 355-56.

3

Where, as here, in-house counsel is involved the communications may involve both business and legal considerations. "Accordingly, the privilege applies to communications with in-house counsel only if the communication's main purpose is to get or give legal assistance." Burton, 2012 U.S. Dist. LEXIS 195470, at *5. The peripheral involvement of in-house counsel, such as simply being copied on a communication, does not suffice to demonstrate that the purpose of the communication is that of legal advice. "What would otherwise be routine, non-privileged communications between corporate officers or employees transacting the general business of the company do not attain privileged status solely because in-house or outside counsel is 'copied in' on correspondence or memoranda." Andritz Sprout-Bauer, Inc. v. Beazer East, Inc., 174 F.R.D. 609, 633 (M.D.Pa. 1997); U.S. Postal Service v. Phelps Dodge Refining Corp., 852 F. Supp. 156, 163-64 (E.D.N.Y. 1994) ("A corporation cannot be permitted to insulate its files from discovery simply by sending a 'cc' to in-house counsel.").

Discussion

The e-mails can be divided into three categories: (1) e-mails from Quita Bunton to outside legal counsel; (2) e-mails to Ms. Bunton from outside counsel and (3) e-mails from Ms. Bunton to other employees of Signature Healthcare.

1. E-mails to outside counsel

Seven of the e-mails listed in the privilege log represent communications from Ms. Bunton to outside legal counsel. Review of the communications demonstrates that each was soliciting advice or information related to arbitration agreements, the impact of the Snyder case or the status of the Snyder case. Some of the e-mails were copied to other Signature Healthcare employees, however the subject of the legal discussion appears to be within the scope of those employees' corporate duties, and thus subsumed within the ambit of the attorney-client privilege. *See* Upjohn

4

Co. v. United States, 449 U.S. 383, 394 (1981); McQuay v. TVA, No. 4:17-CV-00101-JHM, 2018 U.S. Dist. LEXIS 153460, at *17 (W.D. Ky. Sept. 10, 2018); *see also* Burkhead & Scott, Inc. v. City of Hopkinsville, No. 5:12-CV-00198-TBR, 2014 U.S. Dist. LEXIS 166374, at *23 n. 5 (W.D. Ky. Dec. 1, 2014) ("A paralegal's inclusion would not waive privilege."). The undersigned concludes that the purpose of each communication is related to a request for legal advice regarding arbitration agreements and how the Snyder case impacted such agreements. The communications are subject to the attorney-client privilege.

2. E-mails from outside counsel

Eight of the e-mails listed in the privilege log are addressed to Ms. Bunton from outside legal counsel. Each is directed to the provision of legal advice related to arbitration agreements, the impact of the Snyder case or the status of the Snyder case and related to Ms. Bunton's earlier inquiries. Some of the e-mails copy other Signature Healthcare employees, but each of those employees appear to have corporate responsibilities which could be impacted by the legal advice. The undersigned concludes that the communications are subject to the attorney-client privilege.

3. Internal e-mails from Bunton to other Signature Healthcare employees

Four of the e-mails are from Ms. Bunton to other Signature Healthcare employees and do not involve outside legal counsel. "Nothing is harder to disentangle in the modern business world than in-house counsel who gives legal advice but is also intimately involved with the business operations of the client." Edna Selan Epstein, *The Attorney-Client Privilege and the Work-Product Doctrine*, A.B.A. SEC. PUB. LITIG. Vol. 1 at 347 (5th ed. 2007). Whether these communications are afforded privileged status depends on whether they provide legal advice or simply address business matters. In this regard "[L]egal and business considerations may frequently be inextricably intertwined when legal advice is rendered in the corporate context, but the fact that

business considerations are weighed when legal advice is rendered will not vitiate the attorney-client privilege." United States v. Cavallo Nero Ins., Inc., No. 5:16-CV-279-JMH-REW, 2017 U.S. Dist. LEXIS 50398, at *10 n. 8 (E.D. Ky. Jan. 3, 2017) (*quoting* Picard Chemical Inc. Profit Sharing Plan v. Perrigo Co., 951 F. Supp. 679, 685-86 (W.D. Mich. 1996)). Notably, Ms. Bunton's e-mail signature block identifies her position as "Associate Counsel, Litigation," suggesting that her primary duties lie in litigation-related matters as opposed to general business consulting. Upon review of the e-mail communications, the undersigned concludes that the inter-company communications, all of which were directed to other in-house counsel, members of the legal department and members of upper-management, were informational regarding the issue of arbitration agreement enforceability and the status of related litigation and statutes. As such they primarily related to legal rather than business advice, they are subject to privilege.

    4.   The memorandum

One item for which privilege has been claimed is not an e-mail communication. It is a memorandum dated November 15, 2018, authored by Erin Shaughnessy and addressed to Ms. Bunton. As noted, Ms. Shaughnessy has been identified as a legal extern. Signature Healthcare's privilege log describes the document as "privileged communication with legal analysis regarding *Snyder* decision."

The inclusion of non-attorneys in communications does not defeat the privilege where the non-attorney serves as the attorney's representative, such as law clerks, secretaries or paralegals. Hilton-Rorar v. State & Fed. Commc'ns, Inc., No. 5:09-CV-01004, 2010 U.S. Dist. LEXIS 36121, at *11-12 (N.D. Ohio April 13, 2010). Here, however, Ms. Shaughnessy was not serving as a conduit for information from a client to an attorney or vice-versa, rather she was the author of a memorandum in which she independently summarized the arguments of the parties in a petition

for rehearing in the Snyder case. If considered a communication from Ms. Shaughnessy to Ms. Bunton (and, by extension, to Signature Healthcare), the memorandum is not privileged because a legal extern is not "a professional legal adviser in [her] capacity as such."

Alternatively, consideration must be given to whether the memorandum is entitled to protection as work-product. Federal law applies to the question of whether something is entitled to receive a qualified protection from discovery because it is work-product. Fed. R. Civ. P. 26(b)(3); In Re Perrigo Company, 128 F.3d 430, 437 (6th Cir. 1997); Toledo Edison Co. v. G.A. Technologies, Inc., 847 F.2d 335, 338-340 (6th Cir. 1988).

The protection afforded work product is not a privilege as the term is used in the Federal Rules of Civil Procedure or the law of evidence. Hickman v. Taylor, 329 U.S. 495, 509-510 & n. 9 (1947). Instead, work product provides a qualified protection from discovery because work product materials, except for that which reveals an attorney's mental impressions and opinions, may be ordered produced if an adverse party demonstrates "substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by any other means." Fed. R. Civ. P. 26(b)(3); In re Perrigo Co., 128 F.3d 430, 437 (6th Cir. 1997); Toledo Edison Co. v. G.A. Tech., Inc., 847 F.2d 335, 338-41 (6th Cir. 1988). Although the memorandum in question was not authored by an attorney, Rule 26(b)(3) extends the protection to agents. The work of a legal extern can be analogized to that of a paralegal. "[T]he work product of a paralegal is subject to Rule 26(b)(3), whether the paralegal is viewed as an extension of the attorney or as another representative of the party itself." Fine v. Facet Aerospace Prods. Co., 133 F.R.D. 439, 445 (S.D.N.Y. 1990).

The Rule requires, however, that the document be prepared in anticipation of litigation or for trial. To determine whether a document has been prepared "in anticipation of litigation," and

is thus protected work product, the Court must ask two questions: (1) whether that document was prepared "because of" a party's subjective anticipation of litigation, as contrasted with ordinary business purpose; and (2) whether that subjective anticipation was objectively reasonable. United States v. Roxworthy, 457 F.3d 590, 594 (6th Cir.2006). Documents prepared in the ordinary course of business, pursuant to regulatory requirements, or for other non-litigation purposes are not considered prepared in anticipation, and as a result are not subject to the work product protection. Solis v. Food's Employers Labor Relations Assoc., 644 F.3d 221, 232 (4th Cir. 2011) (citation omitted). Moreover, the prospect of potential litigation may not be merely speculative, rather the prospect must be "quite concrete." Roxworthy, 457 F.3d at 594.

Here, Signature Healthcare has provided no indication that the memorandum was prepared in anticipation of litigation. Moreover, as it is a summary of the parties' arguments in a petition for rehearing and response, without expression of opinion or editorializing, it cannot be considered to reveal an attorney's mental impressions or opinions. Consequently, the memorandum is not subject to work-product protection.

ORDER

**WHEREFORE**, the undersigned concludes that all of the documents identified by Signature Healthcare in its privilege log are protected from discovery, with the exception of the memorandum dated November 15, 2018 from Erin Shaughnessy to Quita Burton.

February 18, 2020

**H. Brent Brennenstuhl**
**United States Magistrate Judge**

Copies:    Counsel

# SUPPLEMENTAL PRIVILEGE LOG

| Date | Sender | Recipient/s | Description |
|---|---|---|---|
| 6/15/2016 | Quita Bunton (in-house counsel) | Mark Peters (outside counsel), with cc: to Stacey Wright (in-house paralegal) | Privileged request for legal advice from in-house counsel to outside counsel regarding Arbitration Agreement |
| 6/15/2016 | Mark Peters (outside counsel) | Quita Bunton (in-house counsel), with cc: to Stacey Wright (in-house paralegal) | Privileged communication with legal advice for in-house counsel from outside counsel regarding Arbitration Agreement |
| 6/15/2016 | Mark Peters (outside counsel) | Quita Bunton (in-house counsel), with cc: to Stacey Wright (in-house paralegal) | Privileged communication with legal advice for in-house counsel from outside counsel regarding Arbitration Agreement |
| 10/3/2018 | Quita Bunton (in-house counsel) | Diana Curran (in-house HR), Carter Brock (in-house HR), Mason Forrest (in-house counsel), and Jessica Berkey (in-house legal assistant) | Privileged communication with legal advice from in-house counsel regarding *Snyder* decision |
| 10/3/2018 | Quita Bunton (in-house counsel) | John David Dyche (outside counsel), with cc: to Mason Forrest (in-house counsel) and Jessica Berkey (in-house legal assistant) | Privileged request for legal advice from in-house counsel to outside counsel regarding *Snyder* decision |
| 10/4/2018 | John David Dyche (outside counsel) | Quita Bunton (in-house counsel) | Privileged communication with legal advice for in-house counsel from outside counsel regarding *Snyder* decision |
| 10/9/2018 | Quita Bunton (in-house counsel) | John David Dyche (outside counsel), with cc: to Mason Forrest (in-house counsel) and Jessica Berkey (in-house legal assistant) | Privileged request for legal advice from in-house counsel to outside counsel regarding *Snyder* decision |
| 10/9/2018 | John David Dyche (outside counsel) | Quita Bunton (in-house counsel), with cc: to Mason Forrest (in- | Privileged communication with legal advice for in-house counsel from outside |

| | | house counsel) and Jessica Berkey (in-house legal assistant) | counsel regarding *Snyder* decision |
|---|---|---|---|
| 10/9/2018 | Quita Bunton (in-house counsel) | John David Dyche (outside counsel), with cc: to Mason Forrest (in-house counsel) and Jessica Berkey (in-house legal assistant) | Privileged request for legal advice from in-house counsel to outside counsel regarding *Snyder* decision |
| 10/9/2018 | John David Dyche (outside counsel) | Quita Bunton (in-house counsel), with cc: to Mason Forrest (in-house counsel) and Jessica Berkey (in-house legal assistant) | Privileged communication with legal advice for in-house counsel from outside counsel regarding *Snyder* decision |
| 10/11/2018 | Michael Sutton (outside counsel) | Quinta Bunton (in-house counsel), with cc: to Bruce Baird (outside counsel) | Privileged communication with legal advice for in-house counsel from outside counsel regarding *Snyder* decision |
| 10/12/2018 | Quita Bunton (in-house counsel) | Lynn Fieldhouse (in-house counsel), with cc: to Mason Forrest (in-house counsel) and Jessica Berkey (in-house legal assistant) | Privileged communication with legal analysis among in-house counsel regarding *Snyder* decision |
| 10/15/2018 | Quita Bunton (in-house counsel) | Michael Sutton (outside counsel), Lira Johnson (outside counsel), and Matthew Barszcz (outside counsel), with cc: to Bruce Baird (outside counsel), Mason Forrest (in-house counsel), and Jessica Berkey (in-house legal assistant) | Privileged request for legal advice from in-house counsel to outside counsel regarding *Snyder* decision |
| 10/25/2018 | Quita Bunton (in-house counsel) | Joe Steier (in-house President and CEO), John Harrison (in-house CFO), and Chris Cox (in-house COO), with cc: to Tracy | Privileged communication with legal advice from in-house counsel regarding *Snyder* decision |

10

| | | Jansen (in-house HR), Diana Curran (in-house HR), Shannon Cucksey (in-house Labor Relations), Lynn Fieldhouse (in-house counsel), Mason Forrest (in-house counsel), Jessica Berkey (in-house legal assistant), and Kathy Gallin (in-house Legislative Affairs) | |
|---|---|---|---|
| 11/7/2018 | Quita Bunton (in-house counsel) | Matthew Barszcz (outside counsel) and Lira Johnson (outside counsel), with Cc to Mason Forrest (in-house counsel) and Jessica Berkey (in-house legal assistant) | Privileged request for legal advice from in-house counsel to outside counsel regarding *Snyder* decision |
| 11/14/2018 | Quita Bunton (in-house counsel) | Sharon Gold (outside counsel) | Privileged request for legal advice from in-house counsel to outside counsel regarding *Snyder* decision |
| 11/14/2018 | Sharon Gold (outside counsel) | Quita Bunton (in-house counsel) and Tyson Gorman (outside counsel), with cc: to Stacey Wright (in-house paralegal) | Privileged communication with legal advice for in-house counsel from outside counsel regarding *Snyder* decision |
| 11/14/2018 | Sharon Gold (outside counsel) | Quita Bunton (in-house counsel), Stacey Wright (in-house paralegal), and Tyson Gorman (outside counsel) | Privileged communication with legal advice for in-house counsel from outside counsel regarding *Snyder* decision |
| 11/15/2018 | Erin Shaughnessy (in-house legal extern) | Quite Bunton (in-house counsel) | Privileged communication with legal analysis regarding *Snyder* decision |
| 2/22/2019 | Quita Bunton (in-house counsel) | Tracy Jansen (in-house HR), Shannon Cucksey (in-house Labor | Privileged communication with legal advice from in-house counsel regarding |

| | | Relations), and Diana Curran (in-house HR), with cc: to Lynn Fieldhouse (in-house counsel), Melissa Gruner (in-house counsel), Stacey Wright (in-house paralegal), Jessica Berkey (in-house legal assistant), Kathy Gallin (in-house Legislative Affairs), David Beck (in-house counsel), and Mason Forrest (in-house counsel) | *Snyder* decision |
|---|---|---|---|