**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION**

**CIVIL ACTION NO: 4:19-CV-00087-JHM**

**ANASTASIA CARMAN**                                                                **PLAINTIFF**

**V.**

**SIGNATURE HEALTHCARE, LLC, et al.**                                  **DEFENDANTS**

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendants' Renewed Motion to Stay and Compel Arbitration and Motion for Attorney's Fees. [DN 48]. Fully briefed, this matter is ripe for decision. For the following reasons, Defendants' Renewed Motion to Stay and Compel Arbitration is **GRANTED**. Defendants' Motion for Attorney's Fees is **DENIED**.

**I. BACKGROUND**

Defendants hired Plaintiff Anastasia Carman as a Registered Nurse on January 4, 2019. [DN 48-1 at 3]. Carman was assigned to work at Riverside Care and Rehabilitation Center. [*Id.*]. During the onboarding process, Defendants sent Carman an email on January 3, 2019 that included a link to the onboarding documents that she needed to review and execute. [DN 36-5]. Carman had a unique login and password that only she knew. [DN 48-1 at 4]. To electronically sign the documents, Carman had to click a screen that asked her specifically whether she wanted to sign. [*Id.*]. Carman completed and signed the various onboarding documents including an arbitration agreement. [DN 1-37]. It provided, in part, the following:

> This agreement includes claims: as defined above, including, but not limited to, payment of wages, benefits or other compensation, and any alleged violations of Title VII of the Civil Rights Act of 1964, sections 1981 through 1988 of Title 42 of the United States Code and all amendments thereto, the Employee Retirement Income Security Act of 1974 ("ERISA"), the Americans with Disabilities Act of 1990 ("ADA"), the Age Discrimination in Employment Act of 1967 ("ADEA"), the Older Workers Benefits Protection Act of 1990 ("OWBPA"), the Fair Labor

> Standards Act ("FLSA"), the Occupational Safety and Health Act ("OSHA"), the consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA"), the Family Medical Leave Act ("FMLA"), the Federal False Claims Act, the Sarbanes-Oxley Act, as well as any and all claims under federal, state, and local laws and common law related to or arising out of any part of the employment relationship.

[DN 1-37 ¶ 2]. The arbitration agreement also included a waiver of class and collective claims:

> Except as otherwise required by law, we both agree that: (i) no class or representative action of any kind will be asserted in mediation or arbitration under this agreement, (ii) no class action or representative action claim of any kind will be asserted by either one of us against the other – whether in mediation, arbitration or in court, and (iii) you will only submit your own, individual claim(s) in arbitration and will not represent the interest of any other person. This means that mediation and arbitration under this Agreement will proceed on an individual basis solely, and no class or collective action claims of any kind will be mediated, arbitrated, alleged, or asserted by you against the Company on a class or collective action basis, or any basis involving claims that could be brought in a purported representative capacity on behalf of others. As well, the arbitrator's authority to resolve a claim and make written awards will be limited to claims between you and the Company alone. Claims cannot be joined or consolidated unless we both agree in writing. Finally, any arbitration award or decision will not have a preclusive effect on any issues or claim against or with any other person or entity who is not a named party to the arbitration.

[DN 1-37 ¶ 7].

The arbitration agreement also includes a delegation clause that says, "[t]he arbitrator will decide all aspects of the arbitration, including the validity and applicability of this Agreement. A court of law will not make these decisions." [DN 1-37 ¶ 6]. Just above Carman's electronic signature the arbitration agreement concludes with three sentences:

> **PLEASE READ THIS AGREEMENT CAREFULLY, YOU MAY WISH TO CONSULT AN ATTORNEY BEFORE SIGNING. THIS IS A CONDITION OF ACCEPTANCE OF INITIAL EMPLOYMENT AND CONTINUED EMPLOYMENT**.
>
> **BY SIGNING, YOU ATTEST THAT YOU:** (i) have read and understood its terms, (ii) have had an opportunity to ask questions, and (iii) knowingly and voluntarily agree to its terms and will abide by same.
>
> Both parties understand that by signing this Agreement, we are both **WAIVING OUR RIGHT TO HAVE A CLAIM DECIDED IN A COURT OF LAW, BY A JUDGE OR A JURY**."

2

[DN 1-37 at 2] [emphasis in original].

As a part of her onboarding documents, Carman signed the "Alternative Dispute Resolution Plan Summary." [DN 1-33 at 10]. The Plan Summary says, "**THIS ALTERNATIVE DISPUTE RESOLUTION PLAN BECOMES EFFECTIVE ON SEPTEMBER 1, 2016, AS THE EXCLUSIVE MEANS OF RESOLVING EMPLOYMENT-RELATED LEGAL CLAIMS**." [*Id.* at 1] [emphasis in original]. The Alternative Dispute Resolution Plan was not provided as a part of Carman's onboarding process. [DN 51 at 7, DN 1-40]. The Plan Summary also included a "Frequently Asked Questions" section with one such relevant question and answer as follows:

> Will the Mediator or Arbitrator be empowered to handle class actions?
>
> Answer: Any matter typically brought in state or federal court can be addressed by the Alternative Dispute Resolution Plan. Because arbitration procedures under the plan are governed by the Federal Rules of Civil Procedure, class action proceedings will be dealt with according to those rules.

[DN 1-33 at 10].

A Stakeholder Handbook was also included in Carman's onboarding documents. [DN 1-39]. The Handbook included an arbitration section:

> Under this agreement, all disputes between Stakeholders and the Company or its management, which are not resolved through the Conflict Resolution procedure, must be submitted to binding arbitration, in accordance with the Federal Arbitration Act. This means that claims of any kind concerning your employment with the Company will be decided by a neutral third-party, and not in a court of law. The third party's decision will be final and a Stakeholder may not file a lawsuit or pursue any administrative remedies unless otherwise permitted by law.
>
> Signed acknowledgement of receipt of the Stakeholder Handbook shall serve as acceptance and understanding of this condition of employment, thereby binding Stakeholders to the Arbitration Agreement.
>
> **This means both you and the Company are giving up our respective rights to a trial by jury.**

[*Id.* at 12]. Carman electronically signed the "Stakeholder Handbook Acknowledgement." [DN 1-38].

Later, Carman sued Defendants alleging six claims: (1) Fair Labor Standards Act (FLSA) nonpayment of overtime on behalf of a class, (2) Kentucky Wage and Hour Act (KWHA) nonpayment of wages on behalf of a class, (3) FLSA nonpayment of overtime on behalf of Plaintiff individually, (4) KWHA nonpayment of overtime on behalf of Plaintiff individually, (5) KWHA nonpayment of wages regarding a signing bonus on behalf of Plaintiff individually, and (6) declaratory judgment that Plaintiff does not have to pay signing bonus back. [DN 1 ¶¶ 138-62]. Additionally, after filing suit, Carman moved for discovery about the timing and procedure around Carman electronically signing the arbitration agreement. [DN 10 at 2–5]. The Court granted discovery on this issue. [DN 23]. Defendants now seek to compel arbitration and request attorney's fees for Carman "misrepresenting" how she onboarded regarding the requested discovery. [DN 48-1].

## II. DISCUSSION

### A. Arbitration Agreement

The Federal Arbitration Act (FAA) is "a matter of contract." *Rent–A–Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010). The relevant section of the FAA provides:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. "There are 'two parallel devices for enforcing an arbitration agreement: a stay of litigation in any case raising a dispute referable to arbitration, 9 U.S.C. § 3, and an affirmative order to engage in arbitration, § 4." *Turner v. PillPack, Inc.*, No. 5:18-CV-66-TBR, 2019 WL 2314673, at *2 (W.D. Ky. May 30, 2019) (citation omitted).

4

The Court has four tasks: first, determine whether the parties agreed to arbitrate; second, determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth if the Court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration. *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000) (citation omitted). "In determining whether the parties agreed to arbitrate under the first prong of the *Stout* test, the Court must apply state law of contract formation." *De Angelis v. Icon Entm't Grp. Inc.*, 364 F. Supp. 3d 787, 792 (S.D. Ohio 2019) (citations omitted). Contract defenses like fraud, duress, or unconscionability may invalidate an arbitration agreement. *Rent–A–Ctr.*, 561 U.S. at 68 (citation omitted).

"Where the contract includes a delegation provision, however, the analysis changes." *De Angelis*, 364 F. Supp. 3d at 792. A delegation provision is "an agreement to arbitrate threshold issues concerning the arbitration agreement." *Rent–A–Ctr.*, 561 U.S. at 68. "[P]arties can agree to arbitrate 'gateway' questions 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Id*. at 68–69. The parties must delegate such threshold issues by "clear and unmistakable" evidence. *Id*. at 69 n.1. A delegation provision is "simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other." *Id.* at 70. "Thus, a delegation provision is severable from the remainder of the contract, and 'a party's challenge to another provision of the contract, or to the contract as a whole, does not prevent a court from enforcing a specific agreement to arbitrate'—here, the delegation provision." *De Angelis*, 364 F. Supp. 3d at 793 (citation omitted).

5

Before the Court can address challenges to the delegation provision here, the Sixth Circuit has recently commented that "the Supreme Court's and our case law indicate that the district court retains the authority to first satisfy itself that the agreement was validly formed before granting a motion to compel arbitration." *Taylor v. Pilot Corp.*, 955 F.3d 572, 577 (6th Cir. 2020); *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 530, 202 L. Ed. 2d 480 (2019) ("if a valid agreement exists, and if the agreement delegates the arbitrability issue to an arbitrator, a court may not decide the arbitrability issue."). Contrary to Carman's assertion that there was not a meeting of the minds about arbitration, the Court finds that a valid arbitration agreement exists because both parties agreed to arbitrate. [DN 1-37]. The frequently asked questions section of the Plan Summary does not conflict with the class action waiver contained in the arbitration agreement despite Carman's contention otherwise. [DN 51 at 21].

Turning to the delegation clause, it provides: "The arbitrator will decide all aspects of the arbitration, including the validity and applicability of this Agreement. A court of law will not make these decisions." [DN 1-37 ¶ 6]. Carman relies on parts of the Alternative Dispute Resolution Plan to argue that the delegation clause was not clear and unmistakable because the Plan said, "proceeding under the Plan shall be the exclusive, final and binding method by which employment-related disputes are resolved." Carman argues that this means "the Plan contemplates that a Court, and not the arbitrator, will decide whether arbitration should be compelled." [DN 51 at 12]. The Defendants did not provide Carman with the Plan to sign in her onboarding documents. [DN 51 at 7, DN 1-40]. Also, none of the provisions of the Plan that Carman points to as support of her argument can overcome the severable delegation provision in her signed arbitration agreement.

Carman additionally argues that reasons she gives for why the Court should not compel arbitration under the arbitration agreement applies to the delegation clause as well. [DN 51 at 13]. Carman makes several arguments as to why the Court should not compel arbitration: (1) it violates the FAA's effective vindication doctrine, (2) mutual mistake, (3) unconscionability, and (4) it violates K.R.S. § 336.700. [*Id.* at 1]. The Court will examine each of Carman's arguments to determine if she specifically challenges the delegation provision or the arbitration agreement as a whole.

First, in a footnote and providing no caselaw to support her argument, Carman argues that "the effective vindication doctrine should also prevent this 'delegation clause' argument by Defendant." [DN 51 at 15 n.15]. "An effective vindication challenge is a challenge to the enforceability of the arbitration agreement. After *Henry Schein, Inc. v. Archer & White Sales, Inc.*, these challenges are heard by the arbitrator where, as here, the parties' agreement includes a delegation clause." *De Angelis,* 364 F. Supp. 3d at 795. Carman's effective vindication challenge must be raised before the arbitrator considering the delegation clause in the arbitration agreement.

Second, Carman says that there was a mutual mistake by arguing that "the parties did not have a meeting of the minds about arbitration" because different views can be drawn as to what forms the agreement. [DN 51 at 19]. While Carman says her argument is a mutual mistake argument, it is not. Her argument about a lack of a meeting of the minds is an argument that there was no mutual assent between the parties. *McNees v. RC Nassar, LLC*, No. 2018-CA-001711-MR, 2020 WL 1074795, at *6 (Ky. Ct. App. Mar. 6, 2020) ("a manifestation of mutual assent— also known as a "meeting of the minds"—must be present in order for an enforceable contract to be found."). As previously discussed, Carman contends that the arbitration agreement which includes a class action waiver differs from the Alternative Dispute Resolution Plan Summary's

7

frequently asked question section about class actions. [DN 51 at 21]. The Court finds that this is not a challenge to the delegation clause. Even considering a mutual mistake argument, Carman makes no mutual mistake argument specific to the delegation clause.

Third, Carman contends that the delegation clause coupled with "Defendants' insistence that Plaintiff must pay half of the arbitrator's fees" is substantively unconscionable. [*Id.* at 22]. The arbitration agreement says, "[u]nless State law says otherwise, the parties will share equally the mediator's and/or arbitrator's fees and expenses." [DN 1-37 ¶ 8].

"The doctrine [of unconscionability] is used by the courts to police the excesses of certain parties who abuse their right to contract freely. It is directed against one-sided, oppressive and unfairly surprising contracts, and not against the consequences *per se* of uneven bargaining power or even a simple old-fashioned bad bargain." *Energy Home, Div. of S. Energy Homes, Inc. v. Peay*, 406 S.W.3d 828, 835 (Ky. 2013) (citation omitted) (alteration in original). "Substantive unconscionability refers to contractual terms that are unreasonably or grossly favorable to one side and to which the disfavored party does not assent. When reviewing for substantive unconscionability, consideration is given to 'the commercial reasonableness of the contract terms, the purpose and effect of the terms, the allocation of the risks between the parties, and similar public policy concerns.'" *Id.* (citation omitted)

Carman has not proven a substantive unconscionability contract defense as to the cost-sharing provision. The record is incomplete as to what the arbitrator's fees and expenses will be and about Carman's financial situation. Carman says in her affidavit that she could not even afford $1,000 in arbitrator's fees and expenses. [DN 16-1 ¶ 15]. She also says that she got divorced, had to borrow $150.00 from her ex-husband for living expenses at one point, and had as little as $20.00 in her checking account at one point. [*Id.*]. Carman's declaration does not include

her income from her current employment, her financial obligations, or even financial assets. [DN 16-1]. Having a plaintiff pay half of the arbitrator's fees and expenses could render an arbitration clause unconscionable, but the Court's task here is to consider whether the delegation clause is unconscionable, which Carman has not shown. *See Howell v. Rivergate Toyota, Inc.*, 144 F. App'x 475, 481 (6th Cir. 2005) (holding the plaintiff "bears the burden of demonstrating that the provisions in question impose costs that are likely to have an impermissible deterrent effect").

Finally, Carman challenges the delegation clause under *Northern Kentucky Development District v. Snyder*, 570 S.W.3d 531 (2018). The Kentucky Supreme Court held that K.R.S. § 336.700(2) was not preempted by the FAA in a case involving a state employee whose employment was conditioned on an agreement to arbitrate disputes. *Id.* at 535. Before K.R.S. § 336.700(2) was amended in 2019, the statute prohibited conditioning employment on an agreement to arbitrate. *Wilson v. Starbucks Corp.*, 385 F. Supp. 3d 557, 562 (E.D. Ky. 2019). After *Snyder*, the Kentucky General Assembly amended K.R.S. § 336.700 to apply prospectively and retroactively, and to "expressly allow[] employers to condition employment on an employee's agreement to arbitrate disputes." *Id.* at 563. This Court has previously held that the pre-amendment version of K.R.S. § 336.700(2) was preempted by the FAA and violated the Supremacy Clause; the Court is not persuaded to change its precedent. *Johnson v. Career Sys. Devs.*, No. 4:09-CV-76-M, 2010 WL 292667 (W.D. Ky. Jan. 20, 2010). In any event, Carman's argument is not really a challenge to the delegation clause, rather it is about the enforceability of the arbitration agreement itself.

After considering Carman's specific challenges to the delegation clause, the Court finds that the delegation clause is a clear and unmistakable agreement for the arbitrator to decide all aspects of the arbitration. *See Rent–A–Ctr.*, 561 U.S. at 66 (finding a similar delegation provision

valid). When there is a valid delegation clause, "a court possesses no power to decide the arbitrability issue." *Henry Schein*, 139 S. Ct. at 529. As such, Carman's challenges about the arbitration agreement are issues that should be submitted to the arbitrator based on the delegation provision of the agreement to arbitrate.

### B. Waiver of Right to Compel Arbitration

Carman also asserts that Defendants waived their right to compel arbitration when "Defendants invoked the jurisdiction of this Court by filing a motion to dismiss requesting that this Court (and not any arbitrator) dismiss Plaintiff's claims against Defendants Signature HealthCARE, LLC and LP Calhoun, LLC . . . ." [DN 51 at 31]. Defendants, in their initial Motion to Dismiss and Compel Arbitration, said in a footnote that, "[o]nly one of the Defendants named by Plaintiff is a proper party: Stakeholder Payroll Services, LLC f/k/a Signature Payroll Services, LLC ("Signature Employer") was Ms. Carman's actual former employer. The other two entities named as Defendants played no role and should be dismissed from this action." [DN 12-1 at 1 n.1].

The Court does not "lightly infer a party's waiver of its right to arbitration," but the Court "may find waiver if a party (1) 'tak[es] actions that are completely inconsistent with any reliance on an arbitration agreement; and (2) delay[s] its assertion to such an extent that the opposing party incurs actual prejudice.'" *Solo v. United Parcel Serv. Co.*, 947 F.3d 968, 975 (6th Cir. 2020) (citations omitted) (alternations in original).

Beginning with the first prong, "[n]ot every motion to dismiss is inconsistent with the right to arbitration." *Id.* (citation omitted). But "a motion to dismiss that seeks 'a decision on the merits' and 'an immediate and total victory in the parties' dispute' is entirely inconsistent with later requesting that those same merits questions be resolved in arbitration." *Id.* (citation omitted).

10

Contrary to Carman's assertion, Defendants' motion to dismiss is not inconsistent with its right to arbitration. Defendants' motion simply pointed out that Carman sued some parties that should not have been sued as only one of the named parties was Carman's actual employer. Unlike the defendant in *Solo*, Defendants here did not seek a decision on the merits. *Id.* Defendants have not waived the right to compel arbitration.

### C. Attorney's Fees

Defendants argue that "because Ms. Carman unreasonably multiplied these proceedings to the detriment of the Court and the Signature Defendants, the Court should award the Signature Defendants their reasonable attorney fees caused by Ms. Carman's misrepresentation of the onboarding process." [DN 48-1 at 17]. Specifically, Defendants contend that despite Carman knowing that she completed her onboarding remotely and not in any facility of the Defendants, she argued for discovery on the numerous documents presented on the first day of employment. [*Id.*].

Under 28 U.S.C. § 1927, "any attorney or other person admitted to conduct cases in any court of the United States . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." In *Jones v. Good Shepherd Healthcare Sols., Inc.*, the court explained the standard to be granted fees under § 1927:

> An "unreasonable and vexatious multiplication" occurs only where a party knows or reasonably should know that a claim is frivolous. To warrant sanctions under § 1927, "[t]here must be some conduct on the part of the subject attorney that trial judges, applying the collective wisdom of their experience on the bench, could agree falls short of the obligations owed by a member of the bar to the court and which, as a result, causes additional expense to the opposing party." Mere inadvertence or negligence by the attorney is insufficient. In short, an award of attorney fees under § 1927 is "an extreme sanction and must be limited to truly egregious cases of misconduct."

*Jones v. Good Shepherd Healthcare Sols., Inc.*, No. 3:17-CV-411-DJH, 2019 WL 321420, at *3 (W.D. Ky. Jan. 24, 2019) (citations omitted).

It appears that Carman simply sought discovery, among other things, about the timing and procedure of having Carman electronically sign the arbitration agreement. [DN 10 at 2–5]. The Court finds the conduct of Carman's attorney does not warrant such an extreme action.

### III. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that Defendants' Motion to Stay and Compel Arbitration [DN 48] is **GRANTED** and Defendants' Motion for Attorney's Fees is **DENIED**.

Joseph H. McKinley Jr., Senior Judge
United States District Court

June 10, 2020

cc: counsel of record